Robert J. Quigley, CA Bar 302879
rquigley@weitzlux.com
Weitz & Luxenberg, PC
1880 Century Park East, Suite 700
Los Angeles, CA 90024
(212) 558-5829

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JOSEPH HAMILTON, EDDIE ZHANG, KATHERINE KEMMET, DEVIN HOSKINS, FRANCES DAVIS, PAULA SALOURAS, ROGER LIS, KRISTINE KLEINDIENST, JOSEPH STIPPICK, and DON DEAN, on behalf of themselves and others similarly situated,

    Plaintiffs,

v.

PRIMO BRANDS CORPORATION, BLUETRITON BRANDS, INC., and DOES 1–100, inclusive,

    Defendants.

Civil Action No.: 2:25-cv-11874

**CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

## COMPLAINT

1.    Plaintiffs JOSEPH HAMILTON, EDDIE ZHANG, KATHERINE KEMMET, DEVIN HOSKINS, FRANCES DAVIS, PAULA SALOURAS, ROGER LIS, KRISTINE KLEINDIENST, JOSEPH STIPPICK, and DON DEAN bring claims for damages, equitable relief, and injunctive relief against Defendants PRIMO BRANDS CORPORATION ("Primo Brands"), BLUETRITON

1

BRANDS, INC. ("BlueTriton"), and DOES 1–100, inclusive (collectively, "Defendants" or "Primo"), and allege as follows.

## NATURE OF THE CASE

2.    Primo offers a water delivery service to consumers in California and around the country.

3.    Consumers may sign up for the delivery service online, over the telephone, and, in some cases, in person at locations such as Costco retail stores.

4.    Primo offers its delivery service as a subscription. Subscribers provide their delivery address and payment information to Defendants, which charge them on a recurring basis, ostensibly for the goods and services provided.

5.    Primo offers five-gallon and three-gallon water bottles for delivery and provides water dispensers for rental or purchase. It also delivers coffee and other goods. As part of the delivery service, Primo also picks up and replaces empty water bottles and equipment.

6.    Primo Brands was formed in November 2024 through the merger of two water delivery companies: Defendant BlueTriton, which offered its own water delivery service called ReadyRefresh; and Primo Water Corporation, which owned the Sparkletts water delivery service in Southern California, among other brands.

7.    Primo Brands's CEO recently acknowledged to investors that the merger created "direct delivery disruption" for consumers, and that this was "self-inflicted" by Primo. Primo Brands alluded to "integration issues related to the technology," and stated on an earnings call that "[t]he speed by which we closed facilities and reduced headcount led to disruptions in product supply, delivery, and service." Primo Brands further acknowledged that there have been "large negative sentiment spikes" among its delivery service customers.

8.     This is putting it mildly. Since at least November 2024, Primo has repeatedly missed scheduled deliveries or delayed them for weeks; delivered wrong or incomplete orders; and failed to pick up or replace empty bottles and equipment.

9.     Primo's conduct has not only frustrated consumers and wasted their time, but it has often cost them money. In many instances, Primo has charged consumers for goods or services that it did not deliver to them, or that they did not order. Primo has also improperly charged consumers fees and penalties: for example, for bottles and equipment that Primo itself failed to pick up.

10.     Primo's customer service channels for addressing these issues have been broken or deficient. Many consumers who have asked Primo to fix these problems have been unsuccessful, even after navigating nonfunctional or severely delayed online chat tools, on the one hand, or hours-long telephone wait times, on the other.

11.     Primo has likewise made it exceedingly hard for dissatisfied customers to cancel service. Many consumers who have tried to cancel Primo service have encountered the same or similar obstacles, in many instances costing hours of their time. Primo has also continued to charge many consumers for service even after their attempts to cancel.

12.     These have not been isolated, one-off problems. Primo has wronged its customers on a vast scale, yielding thousands of complaints and affecting as many as hundreds of thousands of consumers.

13.     Plaintiffs and those similarly situated (the "Class," and members thereof, the "Class Members") seek to enjoin Primo's misconduct and to recover the economic damages they have suffered from it.

# **PARTIES**

## *PLAINTIFFS*

14.    Plaintiff Joseph Hamilton is a consumer who, at all times material hereto, was a citizen of California, residing in Los Angeles County. Approximately ten years ago, Mr. Hamilton first signed up for Sparkletts water delivery service through a kiosk at Costco. Primo became responsible for Mr. Hamilton's water delivery service following the merger. In numerous instances, Primo missed delivery dates, did not follow through on alternative delivery dates, and billed Mr. Hamilton for water that it did not deliver to him. On more than one occasion, Mr. Hamilton attempted to rectify these issues by calling Primo's customer service telephone line. He spent approximately 2–3 hours waiting to speak with a representative, who did not resolve his issues. Mr. Hamilton canceled his Primo water delivery service in or about June 2025. Here too, he encountered significant difficulty and delay in canceling service, and he had to wait an hour or more to connect with a representative over the phone to effectuate the cancellation.

15.    Plaintiff Eddie Zhang is a consumer who, at all times material hereto, was a citizen of California, residing in San Francisco County. Mr. Zhang began subscribing to a water delivery service offered by Primo's predecessor in or around 2021. He signed up for the service online and enrolled in a subscription that included regular deliveries of five-gallon water jugs. Mr. Zhang experienced persistent service failures: deliveries were repeatedly missed or delayed, and Primo's customer service channels were unresponsive. Despite multiple attempts to contact Primo to address the missed deliveries and end his subscription, Mr. Zhang was unable to reach a representative or obtain any assistance. Mr. Zhang spent approximately 40 hours over a multi-week period attempting to reach Primo's customer service to no avail. Mr. Zhang was not able to successfully cancel his subscription until July 2025.

16.    Plaintiff Katherine Kemmet is a consumer who, at all times material hereto, was a citizen of New York. Ms. Kemmet subscribed to Primo's water delivery service in or around March 2025. Primo repeatedly failed to acknowledge Ms. Kemmet's attempts to cancel service online or over email, forcing her to call the customer service number several times without being connected to a representative. She spent at least ten to twelve hours unsuccessfully attempting to cancel. Ms. Kemmet was eventually forced to cancel her bank card to stop Primo from continuing to bill her for unwanted goods and services.

17.    Plaintiff Devin Hoskins is a consumer who, at all times material hereto, was a citizen of New York. Mr. Hoskins subscribed to Primo's water delivery service in or around January 2025 after being approached by a Primo representative at Costco. Primo made a number of unauthorized charges to Mr. Hoskin's card on file, with no explanation of what these charges pertained to. Mr. Hoskins made numerous attempts to contact Primo's customer service department to address the unauthorized charges, but he was unable to reach a representative. Primo's mobile app also malfunctioned and did not allow him to submit complaints or initiate cancellation. Mr. Hoskins made multiple unsuccessful attempts to cancel service.

18.    Plaintiff Frances Davis is a consumer who, at all times material hereto, was a citizen of Georgia. In late 2024, Ms. Davis first signed up for ReadyRefresh water delivery service through a website affiliated with BlueTriton. Primo became responsible for Ms. Davis's water delivery service following the merger. In numerous instances, Primo missed delivery dates, and charged Ms. Davis for deliveries that did not take place. In one instance, Primo offered her a free jug of water as a means of making up for a missed delivery but did not provide it. Ms. Davis spent several weeks unsuccessfully attempting to reach customer service. She provided input through a chat feature on Primo's website but did not receive

follow up. Ms. Davis canceled her Primo water delivery service in or about November 2025. She had been unable to cancel service over Primo's website, and had attempted to cancel service by removing her payment details, only to be instructed by the website that this was not possible. When she was finally able to speak with a representative over the telephone, she promptly canceled service.

19.    Plaintiff Paula Salouras is a consumer who, at all times material hereto, was a citizen of Illinois. Ms. Salouras began subscribing to Primo's water delivery service in or around 2022. She signed up through Primo's website and later added her Costco membership for promotional pricing. Ms. Salouras experienced a number of delivery and customer service issues and was told that Primo would properly credit her account to resolve these issues, which it failed to do. Primo added items to her deliveries that she never ordered, resulting in improper charges. Ms. Salouras attempted to contact Primo's customer service department many times to address these issues, but Primo was unresponsive. Ms. Salouras spent approximately forty hours attempting to reach customer service to resolve these issues. Eventually, Primo canceled Ms. Salouras' account and referred her to a collections agency for Primo's improper charges.

20.    Plaintiff Roger Lis is a consumer who, at all times material hereto, was a citizen of Indiana. Several years ago, Mr. Lis signed up for ReadyRefresh water delivery service through a website affiliated with BlueTriton. Primo became responsible for Mr. Lis's water delivery service following the merger. Since then, Primo has in numerous instances missed scheduled deliveries and billed Mr. Lis for products that he did not order. Mr. Lis has encountered significant ongoing difficulties in reaching and communicating with Primo's customer service department, which has failed to resolve his issues with the company.

21.    Plaintiff Kristine Kleindienst is a consumer who resided in Colorado through about August 2025, when she moved to Nebraska, where she is now a

citizen. Ms. Kleindienst subscribed to Primo's water delivery service in or around 2023 through Costco. Since the merger, Primo consistently missed scheduled water delivery dates, as well as pickup dates for Ms. Kleindienst's used water jugs. Primo charged Ms. Kleindienst fees for the water jugs it failed to pick up. Primo initially sent emails notifying her of delivery date changes, but those notices eventually stopped and deliveries simply did not arrive. Ms. Kleindienst spent several hours on hold or attempting to reach customer service. Even after Ms. Kleindienst informed Primo that she wished to cancel service, Primo did not acknowledge her cancellation request and continued to bill her.

22.    Plaintiff Joseph Stippick is a consumer who, at all times material hereto, was a citizen of New Jersey. Mr. Stippick subscribed to Primo's water delivery service online in or around February 2025. During his subscription, Mr. Stippick experienced consistent delivery failures. In numerous instances, Primo rescheduled his water delivery date, but still failed to deliver the water on the rescheduled date. Mr. Stippick attempted to cancel his subscription multiple times by phone, yet Primo continued delivering water and charging him after his cancellation attempts. After attempting to cancel service for weeks despite unresponsive customer service, Mr. Stippick finally succeeded in cancelling his service in June 2025.

23.    Plaintiff Don Dean is a consumer who, at all times material hereto, was a citizen of Ohio. Mr. Dean signed up for water delivery service by a predecessor of Primo approximately ten years ago and enrolled through Costco. Following the merger, Primo missed numerous deliveries, and billed Mr. Dean for water that he did not receive. Primo also charged Mr. Dean equipment fees for equipment that it would not pick up from him despite his requests.  On multiple occasions, Mr. Dean had to wait for an hour or more to speak with customer service representatives. Even after Mr. Dean informed Primo that he wished to cancel

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

service, Primo did not acknowledge his cancellation request and continued to bill him.

### *DEFENDANTS*

24.     Defendant Primo Brands is a corporation formed under the laws of Delaware. It has dual principal places of business in Tampa, Florida and Stamford, Connecticut.

25.     Defendant BlueTriton is a corporation formed under the laws of Delaware. It has dual principal places of business in Tampa, Florida and Stamford, Connecticut. Before the merger, BlueTriton and its affiliates offered the ReadyRefresh water delivery service. On or about November 8, 2024, BlueTriton became a wholly owned subsidiary of Primo.

26.     Does 1–100, inclusive, are yet to be identified entities and individuals who have participated in the law violations of Defendants alleged herein. Plaintiffs reserve all rights to substitute such information in the caption and in an amended pleading upon further investigation.

### **JURISDICTION AND VENUE**

27.     Subject matter jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. section 1332(d). This is a class action involving more than 100 class members. The amount in controversy exceeds $5,000,000, exclusive of interest and costs. One or more members of the proposed classes are citizens of a state different from the Defendants.

28.     Personal jurisdiction is proper over Defendants because they do business in California. Defendants advertise and sell products and services in California. Through their intentional actions, Defendants cause products and services to be marketed and sold to consumers in California. Due to Defendants' intentional actions, Plaintiffs Hamilton and Zhang and the California Subclass have suffered harm in California as set forth herein.

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

29.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Class Members' and California Subclass Members' claims occurred in this district.

## **COMMON FACTUAL ALLEGATIONS**

### *Defendants' Representations*

30.    Many consumers pay for goods to be delivered to them. Among other reasons, delivery services can save the time of a trip to and from the store, and the inconvenience of transporting the goods oneself.

31.    Primo has marketed its delivery service as a timely, reliable way for consumers to save time and avoid inconvenience, for among other reasons, because large containers of water are bulky and heavy to transport.

32.    For example, Primo owns and operates the website "water.com," which it labels "water.com by Primo Brands." This serves as a marketing channel and as an online hub where consumers can view Primo's offerings and sign up for its delivery service. Other webpages operated by Primo also redirect users to water.com. The description of water.com authored by Primo, which may appear when consumers search for "water" or "water delivery" on a search engine, touts that consumers can "Stay refreshed anywhere with our reliable beverage and water delivery to your home and office."


Primo Water
https://www.water.com


**Primo Water: Water Delivery for Your Home & Business**
Stay refreshed anywhere with our **reliable beverage and water delivery** to your home and office. Experience premium taste and service from Primo Water.


Customer Service    Find water near you    Exchange    Water dispensers

33.    The main landing page of "water.com by Primo Brands" prominently represents that consumers can "Enjoy convenient access to high-quality water that fits seamlessly into your lifestyle, wherever and whenever you need it," and that

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

"Your order will be delivered to your doorstep and your empties picked up on your schedule":

### Choose Primo Water™

We provide great-tasting and high-quality water the way you want it.







**Know Your Water ›**
Primo Water goes through a rigorous purification process. Discover why **what's in your water matters.**

**Get Your Water ›**
Enjoy convenient access to high-quality water that fits seamlessly into your lifestyle, **wherever and whenever you need it.**

**Choose Responsible Water ›**
By choosing Primo Water's reusable 3- or 5-gallon bottles, you're not just hydrating — you're helping to **reduce plastic waste** and support a **sustainable future*.**

// //

// //

// //



CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

It appears that Defendants have employed similar messaging since at least late 2024, following the merger.[1]

34.    A consumer testimonial featured elsewhere on Primo's website (https://www.water.com/services/primo-water-delivery) prominently claims that the consumer's delivery driver is "Always on time."

CUSTOMER WATER DELIVERY TESTIMONIALS

★★★★★

My delivery driver is amazing. Always on time and always
willing to answer questions. Always a great attitude. Thank you!

- Lynette

35.    Consumer testimonials of this kind are interpreted to be representative of results that consumers can typically achieve. *E.g.*, 16 C.F.R. § 255.2 (FTC Endorsement and Testimonial Guides).

36.    Primo's messaging regarding timeliness and reliability has not been limited to the water.com website. For example, an informational page on the ReadyRefresh website regarding the merger tells consumers: "rest assured, it's still our same reliable drivers delivering quality water to your door." Similarly, the main Sparkletts website, which channels consumers to water.com to subscribe to service, has prominently represented that "We'll deliver your water right to your door every 2 weeks."

---

[1]    See    https://web.archive.org/web/20241220185948/https://www.water.com/ (December 2024 Wayback Machine capture of Defendants' website); https://web.archive.org/web/20250402073606/https://www.water.com/ (April 2025 Wayback Machine capture of Defendants' website); https://web.archive.org/web/20250622015848/https://www.water.com/ (June 2025 capture of Defendants' website).

37.    Primo has also enticed consumers to sign up for service by representing that it is easy to cancel service. For example, the Primo / Water.com signup process prominently represents that consumers can "Edit or cancel anytime."



38.    Similarly, the ReadyRefresh website, which also features Primo branding, prominently represents that consumers can "Pause or cancel anytime, for any reason."



CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

39.    As further described herein, Primo's representations that the delivery service is timely, reliable, and easy to cancel, have been materially false and misleading, to the detriment of consumers including Plaintiffs and the Class.

***Primo Admits That Consumer Experience Deteriorated Following the Merger***

40.    The merger that gave rise to Primo Brands was completed on November 8, 2024. At that time, Primo touted that the combination would allow for "efficient delivery to customers and consumers across North America." The combined company had approximately three million delivery customers.

41.    Primo Brands stated to investors that it planned to realize efficiencies by, among other things, reducing employee headcounts and fleet sizes, optimizing information technology systems, and automating call center operations. In Los Angeles, for example, Primo Brands stated that it planned to optimize and "density engineer[]" delivery routes using its newly combined resources:



42.    Primo Brands's leadership would soon admit that "the speed by which we closed facilities and reduced headcount led to disruptions in product supply, delivery, and service." Specifically, on an August 7, 2025 earnings conference call

with investors, Primo Brands's CEO, Robbert Rietbroek, stated that, "in some markets, the high-demand standardization initiatives and challenges from an accelerated integration collectively affected our inventory levels and fill rates. We prioritized speed and cost reductions, resulting in some customers experiencing rescheduled or cancelled deliveries on a recurring basis, product substitutions, and extended customer service wait times." Primo Brands's CFO, David Hass, added that "[t]he pursuit of our factory closures across production and branches, in addition to routing, as part of the integration, resulted in short-term disruption to the supply and service of our products to our Direct Delivery customers." Both executives mischaracterized Primo's delivery and customer service issues as temporary, and nearly fixed as of August 2025, but they have persisted.

43.    A September 27, 2025 article in the financial publication *Barron's* was more blunt: it stated that "Everything that could go wrong, has gone wrong," and that tens of thousands of direct delivery subscribers "have left due to frustration with the service, according to Primo itself."[2] *Barron's* stated that, "At its worst, up to 20% of Primo's delivery customers were affected by either a canceled or delayed delivery, according to the firm." This would amount to as many as 600,000 of Primo's three million customers, if not more, accounting for such factors as customer churn and turnover.

44.    On November 6, 2025, Primo Brands announced that it was replacing its CEO, and disclosed a significant decline in sales of its delivery service. On an earnings call that same day, the new CEO, Eric Foss, stated that "I think most of the direct delivery disruption has been self-inflicted." Mr. Foss cited "integration issues related to the technology," product supply disruptions, and "warehouse

---

[2] Evie Liu, *This Water Stock Is Dehydrated. What Could Bring It Back*, Barron's (Sept. 27, 2025), https://www.barrons.com/articles/primo-water-stock-delivery-problems-9c1fbfef.

closures and route realignment" as contributing to the company's delivery problems. He stated that there was "more work to do" to address customer call volume and satisfaction.[3]

45.    Social media posts by people claiming to be lower-level Primo employees have described a breakdown in Primo's operations, and resulting disruption of services and harm to consumers. For example:

a.    An individual who claimed to be a Primo "customer service rep" stated on the social media website Reddit that "ever since the buyout, they've been slashing pay, gutting support, and hiking prices on customers while giving us less and less to work with. Deliveries are missed, the tech barely functions, and the system changes every other week with zero training. We're the ones talking to elderly, disabled, and desperate families who have no idea why their bill doubled or why their water never came."

b.    In another Reddit discussion entitled "Primo brands (employees only!)" another individual stated, "Some of the branches are behind over 2000 deliveries. Daily drags, mostly CA accounts. What's crazy is that the accounts that were under Primo Waters didn't receive any notification about the merger so all these calls are coming in from those accounts and they have no clue why they are locked out of their Primo water account online and why their telephone number isn't registering when they call in. So needless to say it's causing a very very high call volume and a lot of escalated calls."

---

[3] Following the November 6 disclosures and change of management, Primo Brands investors sued the company for securities fraud, alleging that the company had misrepresented or concealed the scope of its post-merger integration problems, and the negative impact this was having on customers. *Rosenblum v. Primo Brands Corp.*, No. 3:25-cv-01902 (D. Conn. Filed Nov. 12, 2025).

    c. Another individual in the same discussion wrote regarding the merger, "The data from the Primo side is an absolutely disaster. The data structure is so rigid that one digit will ruin the whole upload causing catastrophic damages to customers, service, revenue recognition, etc."

    d. Other Reddit posts by employees stated that "We, in customer service, [are] also blindfolded in what's happening in the local branches. The management programmed us to only tell customer that this is because of system upgrade, to improve the service BUT IT'S NOT," and that "they give us these AI generated scripts on what to tell."

    e. A Reddit post by a self-described "Primo route sales rep" stated, "They just axed our compensation tremendously and rolled us back 20 years technology-wise with our new handhelds and delivery interface we use out on route. Expecting a mass exodus nationwide with people retiring early or quitting the company all together. Take whatever customer service tells you as them just telling you what you want to hear and don't believe them until the water shows up at your door. I apologize for your frustrations."

***Primo's Practices Cause Widespread and Ongoing Consumer Harm***

46. Primo's business practices have caused widespread and ongoing harm to Plaintiffs and the Class. As outlined above, Primo has caused consumers to experience missed and repeatedly delayed deliveries; charges for goods and services that it did not deliver to them, or that they did not order; improper fees and penalties, for example, for bottles and equipment that Primo itself failed to pick up; broken or severely deficient customer service channels for resolving disputes and cancellation requests; and in some instances, ongoing charges even after consumers have requested to cancel services.

47.    Plaintiffs' experiences are not merely anecdotal but are corroborated by widespread consumer complaints regarding Primo's services.

48.    For instance, Costco reportedly received a "'huge influx' of complaints about Primo Brands from Costco customers" following the merger.[4]

49.    Primo's delivery services have been the subject of thousands of complaints and negative reviews on social media, on consumer review websites such as Yelp and PissedConsumer, and with the Better Business Bureau (BBB).

50.    For example:

    a.    A November 14, 2025, consumer review with the BBB stated, "After asking for equipment to be removed, it took five months even after cancellation for someone to pick it up. I am still being charged for service I no longer receive and equipment I no longer have on my property. I am assured when I call that it is taken care of but nothing changes."

    b.    An August 7, 2025, review posted to Yelp by a user in Los Angeles stated, "This company operates like a fraud. I had to cancel my account because after I received my water dispenser and bottle of water, I could never get water delivered after that. It takes at least 30 minutes on hold to speak with someone from overseas. After my account was canceled, they continued to bill my credit card and it took literally hours to try to get the charges cancelled. Beware of this scheme."

---

[4] Matt Stoller, *The Water Cooler Giant Primo Brands: When Customer Service Signs Off as "Joseph Stalin,"* BIG (July 11, 2025), https://www.thebignewsletter.com/p/synergies-when-customer-service-signs.

c. A May 15, 2025, complaint on PissedConsumer by a consumer in California stated, "not getting deliveries. Still being billed. Zero response from customer service."

d. An April 26, 2025, complaint posted on TikTok directed to Primo's official TikTok account stated that the consumer called customer service, "SAT ON HOLD FOR 90 MINS. FINALLY HUNG UP," and a few days later, Primo "delivered 10 bottles even though it was canceled."

e. A May 28, 2025, consumer complaint posted to TikTok stated, "I've been charged for weeks for water that hasn't been delivered for weeks. I am not allowed [to] cancel my account online and HAVE to call and no one picks up."

f. A June 10, 2025, complaint posted to Yelp stated, "This company is a SCAM company. DO NOT GIVE THEM YOUR CREDIT CARD INFO FOR AUTO DEBITS. I learned this the hard way and they kept dipping into my account for more and more money for fees after the initial bill was paid in full. . . . I had to cancel my debit card because they kept stealing my money. Now I have over 20 empty bottles and they have billed me for over $300.00 that I don't owe them because they deliver after they take the money out of your account. Completely dishonest and fraudulent company. STAY AWAY."

g. A July 1, 2025, consumer complaint posted to Reddit stated, "I have $400 worth of empty bottles that they won't pick up. I call them, they tell me they're coming the next day and then nothing happens – over and over again. I have no water, yet still pay to rent the water cooler. I have never had an experience with a company like this."

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

h. A November 17, 2025, consumer review with the BBB stated, "We are continually being charged after requesting cancellation via email *FIVE* times. The only reason email was used, is because the hold times are incredibly long and I do have things to do other than sit on hold for the estimated 70+ minutes when calling customer service (seven attempts at that). They literally do not respond to emails, regardless of whom or what department you copy for escalation. The deliveries NEVER show up on time. They send an email and text stating 'we are on our way' then they don't show up. They are typically several days late after we've already run out of water and I've emailed a missed delivery complaint. They never take all the empty bottles. When billing issues occur, they have the audacity to charge late fees on unresolved disputes. After several months, issues remain unresolved because the company simply does not respond."

i. A November 11, 2025, Reddit complaint stated that, after canceling the consumer's account with Primo, Primo not only continued to bill the consumer, but sent their account to collections: "Debt collection over water that I never received due to cancelling my service. Unbelievable."

j. A December 10, 2025, Yelp complaint stated that, "We tried to cancel this service for at least 6 months. We schedule pickups of equipment that were never met. We were on hold and then disconnected after 30+ minutes. Now they say we have late fees and will be sent to collections."

51. These complaints, and Plaintiffs' own experiences, are likely just the tip of the iceberg. Research suggests that among consumers affected by unlawful

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

business practices, "the number of complaints is several orders of magnitude below the number of victims."[5]

52.    Primo's unfair, deceptive, and/or unlawful business practices harmed Plaintiffs and the Classes. Primo's wrongful conduct is ongoing and continues to cause harm.

## TOLLING

53.    Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiffs did not know (and had no way of knowing) that Defendants' representations about their delivery service were deceptive; that Defendants would cause consumers to be improperly billed or charged without their authorization; or that Defendants would obstruct and delay cancellation from their services.

## CLASS ACTION ALLEGATIONS

54.    Plaintiffs bring this lawsuit pursuant to the Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4), on behalf of themselves and all others similarly situated as members of the following Nationwide Class and State Subclasses (collectively, the "Classes").

55.    The proposed Nationwide Class includes all persons and entities that purchased or subscribed to Primo's delivery services in the United States, including its territories.

56.    Plaintiffs also propose separate State Subclasses for the states listed in the claims below, each of which includes all persons or entities that purchased or subscribed to Primo's delivery services in that state.

---

[5] Devesh Raval, *What Determines Consumer Complaining Behavior?* (July 30, 2016), at 3, available at
https://www.ftc.gov/system/files/documents/public_events/966823/raval_whatdetterminesconsumercomplainingbehavior_0.pdf.

57.    Excluded from the Classes are: (1) any Judge, Magistrate Judge, or other judicial officer presiding over this matter, their judicial staff, and members of their family; (2) Defendants, their subsidiaries, officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, and any entity in which Defendants or their affiliates have a controlling interest, as well as their current employees, officers, and directors; (3) Plaintiffs' counsel and Defendants' counsel, and their experts and consultants; and (4) the legal representatives, successors, and assigns of any such excluded persons.

58.    Plaintiffs reserve the right to amend the definitions of these Classes if discovery or further investigation reveals that the Classes should be expanded, divided, or otherwise modified.

59.    This action has been brought and may properly be maintained on behalf of the Class and Subclasses under Federal Rule of Civil Procedure 23, and satisfies the class action prerequisites of numerosity, commonality, typicality, adequacy, and superiority.

60.    ***Numerosity:*** Class members are so numerous that joinder of all members is impracticable. On information and belief, the Class comprises tens or hundreds of thousands of members, or more, and multiple hundreds or thousands of members in each Subclass. The precise number and identities of Class members may be ascertained from Defendants' records. Class members may be notified of the pendency of this action by Court-approved methods such as United States mail, electronic mail, online notifications, and/or published notice.

61.    ***Commonality:*** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to:

    a.  Whether Defendants engaged in the conduct alleged herein;

    b.  Whether Defendants' representations were deceptive or misleading;

c. Whether Defendants caused consumers to be improperly charged for goods or services not delivered and/or requested,

d. Whether Defendants caused consumers to be improperly charged fees;

e. Whether Defendants' subscription, cancellation, and automatic renewal practices violated applicable law;

f. Whether Defendants' conduct violated consumer protection statutes, common law, and other laws as asserted herein;

g. Whether Plaintiffs and the Class members are entitled to equitable relief, which may include restitution, disgorgement, and injunctive relief; and

h. Whether Plaintiffs and the Class members are entitled to damages and other monetary relief, and if so, in what amount.

62. ***Typicality:*** The claims of Plaintiffs are typical of the claims of the Class. Plaintiffs and each Class member purchased or subscribed to Primo's services and were comparably injured through Defendants' wrongful conduct as described herein. Plaintiffs and the other Class Members' claims arise from the same acts, omissions, and practices by Defendants, and are based upon the same legal theories. Plaintiffs are entitled to relief under the same causes of action as the other Class members.

63. ***Adequacy:*** Plaintiffs will fairly and adequately represent and protect the interests of the Class. Their interests and their counsel's interests do not conflict with the interests of the Class Members they seek to represent, they have a strong interest in vindicating their rights and the rights of the Class and Subclasses, and they have retained legal counsel who intend vigorously to prosecute this action.

64. ***Declaratory and Injunctive Relief:*** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and other members of the Class.

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

1   Final injunctive relief and declaratory relief, as requested below, is appropriate

2   respecting the Class as a whole.

3   65.   ***Superiority:*** A class action is superior to all other available methods

4   for fair and efficient adjudication of this controversy for the following reasons: the

5   damages suffered by individual Class members are relatively small compared to

6   the burden and expense of individual litigation, making it impracticable for Class

7   Members to seek relief on their own; Defendants' conduct was uniform and

8   conducted on a mass basis; and there are no unusual difficulties likely to be

9   encountered in case management.

10   66.   Accordingly, this Class and Subclasses are properly brought and

11   should be maintained as a class action under Rule 23 because questions of law or

12   fact common to the Class Members and Subclass Members predominate over any

13   questions affecting only individual members, and because a class action is superior

14   to other available methods for fairly and efficiently adjudicating this controversy.

15   **BACKGROUND ON CALIFORNIA'S AUTOMATIC RENEWAL LAW**

16   67.   Plaintiffs' California causes of action (Counts I – III) are supported in

17   part by California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code

18   § 17600 *et seq.*, a brief discussion of which is in order.

19   68.   The ARL makes it illegal to charge consumers for recurring or

20   ongoing subscriptions, without meeting strict statutory requirements for allowing

21   consumers to quickly and easily cancel those subscriptions.

22   69.   As the California Attorney General recently stated, the ARL requires

23   businesses to "give consumers a clear and straightforward method for cancelling

24   unwanted subscriptions."[6] He explained, "With the increasing number of online

---

[6] Press Release, *Attorney General Bonta Issues Consumer Alert on California's Automatic Renewal Law* (Sept. 5, 2025), https://oag.ca.gov/news/press-releases/attorney-general-bonta-issues-consumer-alert-california%E2%80%99s-automatic-renewal-law.

businesses offering subscriptions, it is important to ensure that businesses are acting transparently and that consumers have the power to manage and cancel these subscriptions more easily."[7]

70.    Since July 1, 2022, the ARL has provided that "a business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately." Cal. Bus. & Prof. Code § 17602(d)(1).

71.    The most recent amendments to the ARL took effect on July 1, 2025. Since that date, the ARL has required that, "if a business provides a mechanism for cancellation by toll-free telephone number, the business shall answer calls promptly during normal business hours and shall not obstruct or delay the consumer's ability to cancel the automatic renewal or continuous service," provided that "If a consumer leaves a voicemail with a business requesting cancellation, the business shall, within one business day, either process the requested cancellation or call the consumer back regarding the cancellation request." Cal. Bus. & Prof. Code §17602(c)(2).

72.    Defendants' services as described in this Complaint are automatic renewal or continuous services subject to the ARL.[8]

---

[7] *Id.*

[8] For purposes of the ARL, "'Automatic renewal' means a plan, arrangement, or provision of a contract that contains a free-to-pay conversion or in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Cal. Bus. & Prof. Code § 17601(a)(1). "'Continuous service' means a plan, arrangement, or provision of a contract that contains a free-to-pay conversion or in which a paid subscription or purchasing agreement continues until the consumer cancels the service." *Id.* § 17601(a)(5). Colloquial descriptions of Defendants' services as subscriptions elsewhere in the Complaint are intended to capture each of these alternative legal definitions.

1

2

## CAUSES OF ACTION

3

## COUNT I
### Violations of the California False Advertising Law (FAL)
### Cal. Bus. & Prof. Code § 17500, *et seq.*
### (On behalf of all Plaintiffs, all Class Members, and the California Subclass)

4

5

6      73.    Plaintiffs repeat and reallege every allegation contained in the

7   Complaint as though fully set forth herein.

8      74.    Plaintiffs bring this claim on behalf of themselves and the Nationwide

9   Class against all Defendants. Plaintiffs Hamilton and Zhang additionally bring this

10  claim on behalf of themselves and the California Subclass against all Defendants.

11     75.    As alleged in detail herein, Defendants have represented their water

12  delivery service to be timely, reliable, and simple to cancel at any time.

13     76.    In reality, in many instances, Defendants' water delivery service was

14  untimely, unreliable, and did not provide the goods or services requested by

15  consumers.

16     77.    Defendants have further misrepresented the nature and propriety of

17  bills or charges that they have caused consumers to incur, as alleged herein.

18     78.    Additionally, the FAL authorizes a private right of action for any

19  violation of California Business & Professions Code, Division 7, Part 3, Chapter 1,

20  which contains the ARL. *See* Cal. Bus. & Prof. Code §§ 17535, 17600 *et seq.*

21     79.    Defendants have enrolled consumers, including Plaintiffs and Class

22  Members, in automatic renewal and/or continuous service membership programs

23  in violation of the FAL and ARL.

24     80.    Defendants' violations include, but are not necessarily limited to:

25         a. Failing to allow a consumer to terminate the automatic renewal or

26            continuous service exclusively online, at will, and without engaging

27            any further steps that obstruct or delay the consumer's ability to

28

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

terminate the automatic renewal or continuous service immediately, in violation of Cal. Bus. & Prof. Code § 17602(d)(1); and

b.  Since at least July 1, 2025, failing to answer calls promptly during normal business hours, without obstructing or delaying the consumer's ability to cancel the automatic renewal or continuous service, and failing to receive and/or timely honor voicemails requesting cancellation, in violation of Cal. Bus. & Prof. Code § 17602(c)(2).

81.  Defendants knew or reasonably should have known that their violations are misleading to reasonable consumers.

82.  Defendants' violations were intended to, and did, induce reliance by Plaintiffs and Class Members, and were a substantial factor to their purchase decisions. Had Plaintiffs and Class Members known the true characteristics of Defendants' water delivery service, and of the difficulty, obstruction, and delay in canceling service, Plaintiffs and Class Members would not have purchased or subscribed to Defendants' services. A reasonable consumer would consider Defendants' violations important in deciding to purchase or subscribe to Defendants' services.

83.  Defendants' violations were a substantial factor and proximate cause of economic harm to Plaintiffs and Class Members.

84.  Plaintiffs and the Class request that the Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the Class any money Defendants acquired by unlawful practices, including restitution and/or restitutionary disgorgement, and for such other relief as set forth herein.

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

1

2

3

**COUNT II**
**Violations of the California Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of all Plaintiffs, all Class Members, and the California Subclass)**

4

5

85.    Plaintiffs repeat and reallege every allegation contained in the Complaint as though fully set forth herein.

6

7

8

86.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Plaintiffs Hamilton and Zhang additionally bring this claim on behalf of themselves and the California Subclass against all Defendants.

9

10

11

12

87.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

13

14

15

88.    Defendants' knowing and intentional conduct, as described herein, constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Defendants have violated the UCL in at least the following ways:

16

17

    a. By misrepresenting their water delivery service to be timely and/or omitting material information that it was not timely;

18

19

    b. By misrepresenting their water delivery service to be reliable and/or omitting material information that it was not reliable;

20

21

22

    c. By misrepresenting their water delivery service to be easy to cancel at any time and/or omitting material information that it is difficult to cancel;

23

24

    d. By causing consumers to be billed or charged for goods or services that they did not request;

25

26

    e. By causing consumers to be billed or charged for goods or services that they did not receive;

27

28

f.  By causing consumers to be billed or charged fees to which they were not subject;

g.  By continuing to bill or charge consumers for goods or services even after consumers have requested cancellation;

h.  By misrepresenting the foregoing bills and charges to be proper;

i.  By failing to provide adequate customer service channels to process consumers' complaints, disputes, and/or cancellation requests;

j.  By failing to allow consumers to easily and without obstruction or delay cancel Defendants' services; and

k.  By violating the other laws alleged herein, including the False Advertising Law and Automatic Renewal Law.

89.    Defendants' representations or omissions were misleading to Plaintiffs and Class Members, who reasonably relied upon them.

90.    The harm to Plaintiffs and the Class greatly outweighs any public utility of Defendants' conduct. This injury was not outweighed by any countervailing benefits to consumers and competition and could not have been reasonably avoided by Plaintiffs and the Class. Defendants violated established public policy and engaged in immoral, unethical, oppressive, unscrupulous, and substantially injurious conduct.

91.    Defendants' violations caused Plaintiffs and Class Members to suffer ascertainable losses and actual damages as a direct and proximate result of Defendants' actions and omissions.

92.    Defendants' violations present a continuing risk to Plaintiffs and the Class, as well as to the general public. Defendants' unlawful acts and practices alleged herein affect the public interest.

93.    Plaintiffs request that the Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing to engage in unfair, unlawful,

and/or deceptive practices and to restore to members of the Class any money they acquired by law violations, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203; for attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5; and for such other relief as set forth herein.

94.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages and other relief under Federal Rule of Civil Procedure 8(a)(3). To the extent Plaintiffs seek equitable relief, Plaintiffs lack an adequate remedy at law, and equitable and injunctive relief is necessary because Defendants' violative conduct is ongoing and is continuing to cause harm to the public.

**COUNT III**
**Violations of the California Consumer Legal Remedies Act (CLRA)**
**Cal. Civ. Code § 1750, *et seq.***
**(On behalf of all Plaintiffs, all Class Members, and the California Subclass)**

95.    Plaintiffs repeat and reallege every allegation contained in the Complaint as though fully set forth herein.

96.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Plaintiffs Hamilton and Zhang additionally bring this claim on behalf of themselves and the California Subclass against all Defendants.

97.    Plaintiffs and the Class are "consumers" as defined in Cal. Civ. Code § 1761(d).

98.    Plaintiffs and the Class have engaged in "transactions" with Defendants as defined in Cal. Civ. Code § 1761(e).

99.    Plaintiffs and the Class purchased "goods" and/or "services" from Defendants as defined in Cal. Civ. Code § 1761(a), (b).

100.   The conduct alleged herein was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods and/or services to consumers.

101.   The conduct alleged herein constitutes unfair methods of competition and unfair or deceptive acts or practices for purposes of the CLRA.

102.   Defendants violated and continue to violate the CLRA by:

   a.   "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have. . . ." Cal. Civ. Code § 1170(a)(5);

   b.   "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Cal. Civ. Code § 1170(a)(14); and

   c.   "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code § 1170(a)(16).

103.   Specifically, as alleged in detail herein, Defendants have and continued to misrepresent and omit material terms, characteristics, benefits, rights, and obligations of their subscription services, and in numerous instances Defendants have represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

104.   For example, in many instances, Defendants have misrepresented their water delivery service to be timely and/or omitted material information that it was not timely; misrepresented their water delivery service to be reliable and/or omitted material information that it was not reliable; misrepresented that their water delivery service was easy to cancel and/or omitted material information that it was difficult to cancel; misrepresented their water delivery service to deliver the goods and services as requested by consumers and/or omitted material information that it

did not deliver goods and services as requested by consumers; misrepresented improper bills and charges as described herein to be proper; represented that it would deliver or provide goods or services that it did not; and violated the requirements of the ARL.

105. Defendants' representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendants knew or reasonably should have known that their representations are misleading to reasonable consumers.

106. Defendants' misrepresentations were intended to induce reliance, and Plaintiffs and the Class reasonably relied upon them. Defendants' misrepresentations were a substantial factor in Plaintiffs' and the Class's purchase decisions.

107. Defendants' violative conduct was a substantial factor and proximate cause of economic injury to Plaintiffs and the Class.

108. Defendants continue to violate the CLRA and continue to injure the public by misleading consumers about their goods and services. Accordingly, Plaintiffs seek injunctive relief on behalf of the general public to prevent Defendants from continuing to engage in these unlawful practices.

109. On or about October 10, 2025, pursuant to Cal. Civ. Code § 1782(a), written notice of Defendants' violations of the CLRA was sent to Defendants Primo and BlueTriton by certified mail, return receipt requested. This notice demanded that Defendants take action to correct their violations. It has been more than 30 days since Defendants Primo and BlueTriton received notice of their violations, which they have not corrected for Plaintiffs or members of the Class.

110. A CLRA venue declaration is appended hereto.

111. Accordingly, Plaintiffs seek all monetary relief available under the CLRA, including restitution, damages (including compensatory, expectation, and

punitive damages), attorneys' fees, and all other forms of monetary relief available.[9]

**COUNT IV**

**Violations of New York General Business Law §§ 349, 350, and 527-a**
**(On behalf of Plaintiffs Kemmet and Hoskins and the New York Subclass)**

112.  Plaintiffs repeat and reallege every allegation contained in the Complaint as though fully set forth herein.

113.  Plaintiffs Kemmet and Hoskins bring this claim on behalf of themselves and the New York Subclass against all Defendants.

114.  New York General Business Law (GBL) § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

115.  GBL § 350 provides, "False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful."

116.  GBL § 527-a is New York's automatic renewal law. It is enforceable through GBL §§ 349–350's consumer protection and false advertising provisions. GBL § 527-a was reportedly modeled in many regards on California's ARL, and for purposes of this Complaint imposes substantially similar requirements to the California ARL provisions outlined above. For example, GBL § 527-a(1)(d) requires subscription providers to "provide the consumer with the option to cancel at any time using a simple cancellation mechanism that is as easy to use as the mechanism that the consumer used to provide consent." GBL § 527-a(1)(e) prohibits "impos[ing] unreasonable or unlawful conditions upon, refus[ing] to

---

[9] To the extent that any DOE Defendant(s) purportedly did not receive sufficient notice for purposes of seeking all relief authorized by the CLRA, which Plaintiffs do not concede, Plaintiffs seek injunctive relief only as to these defendants, and reserve all rights to amendment pursuant to Cal. Civ. Code § 1782(d).

acknowledge, obstruct[ing] or unreasonably delay[ing] cancellation requested or attempts to request cancellation by a consumer."

117.    Defendants' knowing and intentional conduct, as described herein, has violated the GBL in at least the following ways:

a.    By misrepresenting their delivery service to be timely and/or omitting material information that it was not timely;

b.    By misrepresenting their delivery service to be reliable and/or omitting material information that it was not reliable;

c.    By misrepresenting their delivery service to be easy to cancel at any time and/or omitting material information that it is difficult to cancel;

d.    By causing consumers to be billed or charged for goods or services that they did not request;

e.    By causing consumers to be billed or charged for goods or services that they did not receive;

f.    By causing consumers to be billed or charged fees to which they were not subject;

g.    By continuing to bill or charge consumers for goods or services even after consumers have requested cancellation;

h.    By misrepresenting the foregoing bills and charges to be proper;

i.    By failing to provide adequate customer service channels to process consumers' complaints, disputes, and/or cancellation requests;

j.    By failing to allow consumers to easily and without obstruction or delay cancel Defendants' services, and failing to provide the consumer with the option to cancel at any time using a simple cancellation mechanism that is as easy to use as the mechanism that the consumer used to provide consent; and

      k.  By imposing unreasonable or unlawful conditions upon, refusing to acknowledge, obstructing, or unreasonably delaying cancellation requested or attempts to request cancellation by a consumer.

118.  Defendants knew or should have known that the conduct complained of herein violated the GBL.

119.  As a result of Defendants' recurring, unlawful deceptive acts and practices, Plaintiffs Kemmet and Hoskins and the New York Subclass are entitled to statutory damages of $50 per violation of GBL § 349 and $500 per violation of GBL § 350 (*see Montera v. Premier Nutrition Corp.*, 111 F.4th 1018 (9th Cir. 2024)), compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, as well as interest, and attorneys' fees and costs.

## COUNTS V – XIII
### Violations of Other States' Consumer Protection Statutes

120.  Plaintiffs repeat and reallege every allegation contained in the Complaint as though fully set forth herein.

121.  Defendants' knowing and intentional conduct, as described herein, has compromised unfair and/or deceptive acts or practices in at least the following ways:

      a.  By misrepresenting their delivery service to be timely and/or omitting material information that it was not timely;

      b.  By misrepresenting their delivery service to be reliable and/or omitting material information that it was not reliable;

      c.  By misrepresenting their delivery service to be easy to cancel at any time and/or omitting material information that it is difficult to cancel;

      d.  By causing consumers to be billed or charged for goods or services that they did not request;

e.  By causing consumers to be billed or charged for goods or services that they did not receive;

f.  By causing consumers to be billed or charged fees to which they were not subject;

g.  By continuing to bill or charge consumers for goods or services even after consumers have requested cancellation;

h.  By misrepresenting the foregoing bills and charges to be proper;

i.  By failing to provide adequate customer service channels to process consumers' complaints, disputes, and/or cancellation requests; and

j.  By failing to allow consumers to easily and without obstruction or delay cancel Defendants' services.

122.  Defendants' practices violate the laws and consumer protection statutes of states including, without limitation, Connecticut, Florida, Colorado, Georgia, Illinois, Indiana, Nebraska, New Jersey, and Ohio. The table below summarizes these Counts, and the Plaintiffs and Classes or Subclasses that bring them:

| Count | State | Plaintiffs | Statutory Authority |
|-------|-------|-----------|---------------------|
| V. | Connecticut | All Plaintiffs and Classes[10] | Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* |
| VI. | Florida | All Plaintiffs and Classes[11] | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 *et seq.* |

---

[10, 11]: In the alternative to, and without limitation to, Plaintiffs' and the Classes's claims for nationwide relief under California's consumer statutes, Plaintiffs and the Classes state these alternative claims under the laws of Connecticut and Florida, the dual principal places of business of Defendants.

| VII. | Colorado | Plaintiff Kleindienst and the Colorado Subclass | Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.* |
| VIII. | Georgia | Plaintiff Davis and the Georgia Subclass | Georgia Deceptive Trade Practices Act O.C.G.A. § 10-1-372, *et seq.* |
| IX. | Illinois | Plaintiff Salouras and the Illinois Subclass | Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505. |
| X. | Indiana | Plaintiff Lis and the Indiana Subclass | Indiana Deceptive Consumer Sales Act, Indiana Code Chapter 24-5-0.5. |
| XI. | Nebraska | Plaintiff Kleindienst and the Nebraska Subclass | Nebraska Consumer Protection Act Neb. Rev. Stat. § 59-1601, *et seq.* |
| XII. | New Jersey | Plaintiff Stippick and the New Jersey Subclass | New Jersey Consumer Fraud Act N.J. Stat. Ann. § 56:8-1, *et seq.* |
| XIII. | Ohio | Plaintiff Dean and the Ohio Subclass | Ohio Consumer Sales Practices Act Ohio Rev. Code § 1345.01, *et seq.* |

123.   Plaintiffs plead these claims separately as well as in the alternative to their nationwide and California law claims under Federal Rule of Civil Procedure 8(a)(3).

### COUNT XIV
### Unjust Enrichment
### (On behalf of Plaintiffs and all Class Members)

124.   Plaintiffs repeat and reallege every allegation contained in the Complaint as though fully set forth herein.

125.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses, against all Defendants.

126.   By reason of their conduct, Defendants caused damages to Plaintiffs and the Class Members. Plaintiffs and the Class Members conferred tangible and

36

material economic benefits on Defendants by paying them funds to which Defendants were not entitled. These included payments for goods and services that Defendants did not provide, fees and penalties that Plaintiffs did not owe to Defendants, and ongoing charges from subscription services that Defendants obstructed Plaintiffs from canceling.

127. Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly obtain unjustly obtained funds at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class Members, and to Defendants' benefit and enrichment.

128. Plaintiffs and the Class Members did not benefit from the Defendants' misconduct.

129. Defendants have violated fundamental principles of justice, equity, and good conscience. It is inequitable and unconscionable for Defendants to retain the benefits conferred by Plaintiffs' and the Class Members' payments.

130. Plaintiffs and the Class Members do not have an adequate remedy at law.

131. Equity cannot in good conscience permit Defendants to retain the benefits that they derived from Plaintiffs and the Class Members through unjust and unlawful acts. Restitution or disgorgement of the amount of Defendants' unjust enrichment is necessary.

132. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages and other relief under Federal Rule of Civil Procedure 8(a)(3).

## COUNT XV
### Negligence / Negligence Per Se
### (On behalf of all Plaintiffs and all Classes)

133. Plaintiffs repeat and reallege every allegation contained in the Complaint as though fully set forth herein.

134.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses, against all Defendants.

135.    As described herein, in many instances, Defendants caused Plaintiffs and Class Members to: be billed or charged for goods or services that they did not request; be billed or charged for goods or services that they did not receive; be billed or charged fees to which they were not subject; and be billed or charged for goods or services even requesting cancellation.

136.    Defendants had a duty of care not to cause Plaintiffs and Class Members to be charged for goods or services that they did not request or receive; fees to which Plaintiffs were not subject; or ongoing charges even after requesting cancellation. Defendants breached their duties by wrongfully imposing these charges, in violation of the consumer protection statutes complained of herein.

137.    Additionally, Defendants have failed to provide adequate customer service channels to process consumers' complaints, disputes, and/or cancellation requests, and failed to allow consumers to easily and without obstruction or delay cancel Defendants' services.

138.    Defendants had legal duties to provide adequate customer service channels and cancellation mechanisms to consumers. These duties included, but were not necessarily limited to, the ARL's requirement that Defendants allow consumers to terminate their automatic renewal or continuous services exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately, pursuant to Cal. Bus. & Prof. Code §17602(d)(1); and, since July 1, 2025, the ARL's requirement that Defendants answer calls promptly during normal business hours, without obstructing or delaying the consumer's ability to cancel the automatic renewal or continuous service, and, at a minimum, that Defendants

timely receive and/or honor voicemails requesting cancellation, pursuant to Cal. Bus. & Prof. Code §17602(c)(2).

139.   Defendants' violations of these duties and statutory requirements were a substantial factor in bringing about harm to Plaintiffs and the Class.

140.   As a result of Defendants' misconduct, Plaintiffs and Class Members have been injured and seek damages in an amount to be proven at trial.

141.   Plaintiffs plead this claim separately as well as in the alternative to their other claims for relief under Federal Rule of Civil Procedure 8(a)(3).

## COUNT XVI
### Conversion
**(On behalf of all Plaintiffs and all Classes)**

142.   Plaintiffs repeat and reallege every allegation contained in the Complaint as though fully set forth herein.

143.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses, against all Defendants.

144.   Plaintiffs and Class Members have possessory rights in their own money and property.

145.   Defendants intentionally and substantially interfered with Plaintiffs' and Class Members' rights by taking and retaining their money and property without authorization or consent.

146.   Defendants wrongfully withheld specific, definite sums from Plaintiffs and Class Members, to which Defendants have no legal right.

147.   As a direct and proximate result of Defendants' actions, Plaintiffs and Class Members have suffered monetary losses and seek damages in an amount to be proven at trial.

148.   Plaintiffs plead this claim separately as well as in the alternative to their other claims for relief under Federal Rule of Civil Procedure 8(a)(3).

**PRAYER FOR RELIEF**

149.   Plaintiffs seek the following relief for themselves and the proposed Class and each Subclass:

   a.   An order certifying the asserted claims or issues as a class action;

   b.   An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged in this Complaint;

   c.   Entry of judgment in favor of Plaintiffs and the class, and against Defendants;

   d.   A declaration that Defendants are financially responsible for all Class notices and the administration of Class relief;

   e.   All monetary and other relief within the Court's power to grant, including compensatory damages, restitution, disgorgement, civil penalties and/or statutory damages, punitive and exemplary damages, and trebled and/or enhanced damages, as authorized by law, in amounts to be determined at trial;

   f.   Pre- and post-judgment interest;

   g.   Reasonable attorneys' fees and costs, as authorized by law;

   h.   Leave to amend this Complaint when justice so requires, and to conform to the evidence presented at trial; and

   i.   Any additional relief as the Court determines to be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all issues.

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

Dated: December 16, 2025

Respectfully submitted,

By: /s/ Robert J. Quigley

Robert J. Quigley, CA Bar 302879
rquigley@weitzlux.com
Weitz & Luxenberg, PC
1880 Century Park East, Suite 700
Los Angeles, CA 90024
(212) 558-5829

*Attorney for Plaintiffs*

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF

## **Affidavit Pursuant to California Civil Code § 1780(d)**

I, Robert J. Quigley, declare as follows:

    1.    I am an attorney for the Plaintiffs in this matter and am an individual over eighteen years of age. I am authorized to execute this affidavit as required by California Civil Code Section 1780(d) on Plaintiffs' behalf.

    2.    This action is commenced in a proper county and federal judicial district. Defendants do and did business in this county and district, and a substantial portion of the events alleged in the Complaint occurred in this county and district.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on December 16, 2025 in Los Angeles, California.


/s/ Robert J. Quigley

Robert J. Quigley